Filed 6/29/21  P. v. Woods CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LYNN RASHAUN WOODS,<br><br>    Defendant and<br>    Appellant. | B305662<br><br>(Los Angeles County<br>Super. Ct. No. BA379637) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Robert A. Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D.

Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

_____

Lynn Rashaun Woods, convicted in 2012 of first degree murder and sentenced to an aggregate indeterminate state prison term of 53 years eight months to life, filed a petition for a writ of error *coram nobis* in 2020 seeking to vacate his conviction. In support Woods alleged he had recently learned he had been suffering from a drug-induced toxic psychosis at the time of the offense, which continued throughout his trial. As a result, he argued, he was not competent to stand trial, let alone to represent himself; and he had been unable to assert a meritorious insanity defense at trial. The superior court summarily denied the petition. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Woods's Conviction and Appeals*

The evidence presented at Woods's trial is set forth in detail in this court's initial opinion in the case, rejecting Woods's claims of instructional error but conditionally reversing the judgment of conviction and remanding for a new hearing on Woods's motion for discovery of police officer personnel records (*People v. Woods* (Oct. 21, 2013, B241041) [nonpub. opn.]).

Woods exercised his rights under *Faretta v. California* (1975) 422 U.S. 806 and represented himself at trial. In brief, the evidence showed that Terrence Butler was found dead in an alley in the early morning of August 18, 2010. He had been shot nine times. A golf club and empty bottle were found near the body. A fingerprint on the bottle matched the right index finger of Sherman Smith. A car registered to Woods was parked at the end of the alley.

2

Two witnesses for the prosecution testified Butler appeared at Smith's house in the early morning of August 18, 2020, holding a golf club. A number of individuals at the house were smoking crack cocaine. Woods and Butler had an unfriendly verbal exchange and left together. The witnesses then heard gunshots. Woods returned to the house holding a wrapped up jacket or sweater, which he handed to Smith, and then left. Other witnesses confirmed portions of that narrative.

Smith, testifying as a defense witness, said Woods and Butler were in charge of drug sales at the house. Another defense witness testified Woods used drugs at the house but did not sell them. Testifying in his own defense, Woods admitted he was using drugs during the period in which the murder occurred. According to Woods, Butler was disliked by the individuals at the house, but not by Woods. When Butler arrived at the house on the night of the murder, Woods was working on a computer. He heard others argue with Butler. Woods remained at the computer. After Butler left, Woods saw Smith go outside with a handgun. Five minutes later Woods heard gunshots. Smith then returned to the house and told everyone to leave.

The jury convicted Woods of first degree murder (Pen. Code, § 187, subd. (a))[1] and two counts of possession of a firearm by a felon (former § 12021, subd. (a)(1), currently § 29800, subd. (a)) and found true that Woods had personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)). The court sentenced Woods to an aggregate indeterminate state prison term of 53 years eight months to life (25 years to life for first degree murder, plus a consecutive term

---

[1] Statutory references are to this code.

3

of 25 years to life for the firearm enhancement, plus a consecutive upper determinate term of three years for possession of a firearm by a felon, plus a consecutive term of eight months (one-third the middle term) for the second firearm possession count).

On appeal this court rejected Woods's contentions the trial court had erred in failing to instruct the jury sua sponte that provocation could reduce murder from first degree to second degree and had committed other instructional error. However, following our review of the record of the in camera proceedings relating to Woods's motion for discovery of police personnel records, we conditionally reversed the judgment and remanded for a new hearing. (*People v. Woods*, *supra*, B241041.)

Following further proceedings on remand, the trial court reinstated the prior judgment. Woods did not appeal. However, once again representing himself, Woods filed a request to reduce what he described as a restitution fine, claiming the trial court had improperly imposed "a restitution fine for the amount of $17,857.15 without notice or a hearing on the ability to pay." (In fact, the court had imposed a $10,000 restitution fine, $7,500 in restitution to the Victim Restitution Board and $357.15 in direct restitution to the victim's family.) The trial court summarily denied the motion, and we affirmed that order on appeal. (*People v. Woods* (Oct. 28, 2014, B255343) [nonpub. opn.].)[2]

---

[2]     Following this court's decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157, Woods again challenged the trial court's failure to hold an ability-to-pay hearing prior to imposing fees and fines at his 2011 sentencing. We denied his petition for writ of habeas corpus on October 8, 2019 (B300784).

## 2. *Woods's Postjudgment Petition*

On February 18, 2020 Woods filed a petition for writ of error *coram nobis* in superior court seeking to vacate his conviction based on newly discovered evidence. In support of his petition Woods averred he was suffering from a mental disorder and was insane at the time of the offense but did not present this defense while representing himself because he was also insane at the time of trial and thereafter. Woods recounted that he had suffered from chronic use of methamphetamine starting five years before Butler's murder, which left him with a mental disorder and developmental disability. He also heard voices that instructed him to do things, including to represent himself at trial. In September 2019 Woods's psychologist at Mule Creek State Prison, Dr. Richard Ortigo, informed him he was likely suffering from a drug-induced toxic psychosis at the time of the offense, which continued through the time of trial. Woods alleged he acted diligently thereafter, compiling his mental health records and preparing the *coram nobis* petition.

## 3. *The Superior Court's Ruling*

The superior court denied Woods's petition on February 27, 2020 without appointing counsel or holding a hearing. In its minute order the court stated, "Petitioner has not presented substantial evidence of either legal insanity or mental incompetency to warrant relief."

Woods filed a timely notice of appeal.

## DISCUSSION

### 1. *Governing Law and Standard of Review*

A writ of error *coram nobis* is a narrow remedy used to secure relief when no other remedy exists. (*People v. Adamson* (1949) 34 Cal.2d 320, 326.) To obtain relief the petitioner must

5

establish the existence of some fact that, without his or her fault or negligence, was not presented to the court at trial and would have prevented the rendition of the judgment; the new evidence does not go to the merits of the issues of fact determined at trial; and the petitioner did not know and could not have with due diligence discovered the facts upon which he or she relies substantially earlier than the time the petition was filed. (*People v. Kim* (2009) 45 Cal.4th 1078, 1093 (*Kim*); *People v. Shipman* (1965) 62 Cal.2d 226, 230.) "'The writ of error *coram nobis* is not a catch-all by which those convicted may litigate and relitigate the propriety of their convictions *ad infinitum*. In the vast majority of cases a trial followed by a motion for a new trial and an appeal affords adequate protection to those accused of crime. The writ of error *coram nobis* serves a limited and useful purpose. It will be used to correct errors of fact which could not be corrected in any other manner. But it is well-settled law in this and in other states that where other and adequate remedies exist the writ is not available.'" (*Kim,* at p. 1094.) In addition, a *coram nobis* petition may raise only errors of fact, not errors of law. (*Id.* at p. 1093.) Nor may such a petition be based on a claim of ineffective assistance of counsel. (*Id.* at p. 1104.) A petition for writ of *coram nobis* may not attempt to ""correct an issue of fact which has been adjudicated, even though wrongly determined; nor for alleged false testimony at the trial; nor on the ground that a juror swore falsely as to his qualifications; nor for newly discovered evidence."" (*In re Lindley* (1947) 29 Cal.2d 709, 726.)

In view of the strict requirements for relief, "it will often be readily apparent from the petition and the court's own records that a petition for *coram nobis* is without merit and should

6

therefore be summarily denied." (*People v. Shipman*, *supra*, 62 Cal.2d at p. 232.) Accordingly, absent adequate factual allegations stating a prima facie case for relief, counsel need not be appointed for the petitioner. (*Ibid.*; see *In re Clark* (1993) 5 Cal.4th 750, 780 [right to counsel attaches in postjudgment proceedings only after petitioner states a prima facie case for relief].) We review the superior court's order denying a petition for writ of error *coram nobis* for abuse of discretion. (*Kim*, *supra*, 45 Cal.4th at p. 1095.)

 2. *Woods Failed To Make a Prima Facie Showing He Is Entitled to Relief*

Allegations such as those contained in Woods's petition—that a defendant was legally insane at the time he or she committed a crime and did not present that defense prior to conviction due to that mental condition—may be sufficient to support *coram nobis* relief. In *People v. Shipman*, *supra*, 62 Cal.2d 226 the petitioner filed a *coram nobis* petition 10 months after pleading guilty to shooting two police officers who were questioning him about an abandoned car. The petitioner alleged "he was 'hopped up' on benzedrine tablets and that he had slept for only brief periods" during the nine days preceding the shooting and submitted sworn statements from associates that he customarily drugged himself heavily with Benzedrine and suffered from delusions of police persecution. (*Id.* at p. 233.) In addition, he provided the report of a prison psychiatrist that "defendant was suffering from a toxic psychosis because of the massive overdoses of benzedrine and that this toxic state existed prior to and during the acts for which he was convicted." (*Ibid.*)

The Supreme Court held the superior court did not err in setting the petition for hearing,[3] explaining, "Defendant's allegations, if true, would meet the requirements for a writ of *coram nobis*. His legal sanity at the time of the crime is a material question that was neither put in issue nor tried. [Citations.] [¶] Furthermore, if he was incapable of participating in the formulation of his defense, defendant may have failed to present facts supporting an insanity plea through no fault of his own. Finally, the petition was presented within 10 months from the judgment, and we cannot say that defendant was not diligent in discovering the facts upon which he relies." (*People v. Shipman, supra*, 62 Cal.2d at p. 233.)

Woods's petition seeking *coram nobis* relief based on insanity, filed more than eight years after his conviction, is very different from Shipman's, although both petitions cite to prison therapists' diagnoses of toxic psychosis at the time of the commitment offenses. A psychologist's summary prepared following an initial evaluation of Woods in November 2010 while he was in custody awaiting trial, which Woods included with his petition, stated, "Judgment, insight fair, impulse control adequate. Pt [Woods] does not currently exhibit any signs or sxs [symptoms] of mood disturbance or psychosis." In addition, the evaluator noted that Woods had described a long history of drug use, including both methamphetamine and cocaine, and reported having hallucinations consisting of his cell phone talking to him and telling him what to do (including to continue taking drugs).

---

[3]    At sentencing both the prosecutor and the trial court at sentencing recommended Shipman receive psychiatric treatment. (*People v. Shipman, supra*, 62 Cal.2d at p. 229.)

Nonetheless, the psychologist concluded that Woods was not reporting credible symptoms.

This report adequately supports the superior court's finding that Woods's petition did not present substantial evidence of legal insanity or mental incompetence to stand trial or represent himself. (See *People v. Goodspeed* (1963) 223 Cal.App.2d 146, 152 ["In *coram nobis* proceedings there is a strong presumption that the judgment of conviction is valid in all respects. [Citations.] The defendant has the burden of overcoming such presumption and establishing by a preponderance of the evidence 'that he was deprived of substantial legal rights by extrinsic causes'"].) In addition, unlike Shipman, who pleaded guilty prior to trial, Woods represented himself during trial and then again in proceedings following our remand after his first appeal and also testified in his own defense, providing multiple opportunities for the trial court to assess whether he was mentally competent. Yet, as Woods himself emphasizes, at no time did the court express a doubt as to his mental competence or order a hearing to evaluate his competency. Woods's petition did not include any material from the trial record that would indicate the court committed error in that regard. Indeed, as the Attorney General points out, when testifying at trial, far from suggesting he had killed Butler as part of a drug-induced psychosis, Woods insisted he had been diligently working on a computer that evening and that Smith was the actual murderer, a reasonable, albeit ultimately unsuccessful, trial strategy.

Even if the psychologist's evaluations and the trial court's implied assessment of Woods's competence in 2010 were incorrect and he was actually experiencing drug-induced mental instability, including auditory hallucinations, at the time of the

offense and during trial, summary denial of the petition was justified. The record clearly established Woods was well aware of these facts long before Dr. Ortigo advised him he was likely suffering from toxic psychosis. That is, the diagnostic label for what Woods was purportedly experiencing may have been new (toxic psychosis), but the fact of those symptoms and their cause (polysubstance dependency and depression), as well as their effect on his reasoning abilities and mental acuity, were not. These issues could have been raised by his appointed appellate counsel in his initial direct appeal or in a habeas corpus petition after his conviction was final and long before his 2020 *coram nobis* petition.

In sum, to the extent it exists at all, the evidence Woods now insists would have prevented the rendition of the judgment against him is not new, nor was Woods diligent in presenting it to the court. Accordingly, the superior court did not abuse its discretion in summarily denying Woods's petition for writ of error *coram nobis*.

## DISPOSITION

The postjudgment order is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

10